UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| MID-SOUTH TAX CREDIT PARTNERS I, et al., | }<br>}<br>} |
| Plaintiffs, | }<br>} Case No.: 6:19-CV-496-RDP |
| v. | }<br>} |
| CLATUS JUNKIN, | }<br>} |
| Defendant. | } |

**MEMORANDUM OPINION**

This case is before the court on Defendant Clatus Junkin's[1] ("Defendant") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1), (6), and (7). (Doc. # 4). The Motion is fully briefed (Docs. # 7-8) and is ripe for decision. After careful review, and for the reasons explained below, Defendant's Motion (Doc. # 4) is due to be denied.

**I.    Background**

Plaintiff Mid-South Tax Credit Partners I ("Mid-South") is a limited partnership organized in Delaware with a principal place of business in St. Louis, Missouri. (Doc. # 1 at ¶ 11). Plaintiff AJY Management Group, Inc. ("AJY") is a corporation organized in Missouri with a principal place of business in St. Louis, Missouri. (*Id*. at ¶ 10). Mid-South and AJY (collectively, "Plaintiffs") allege that they are limited partners in Fayette Properties, Ltd. ("the Partnership"). (*Id*. at ¶ 1). The Partnership is a limited partnership organized under Alabama state law. (*Id*. at ¶ 24). Defendant, an Alabama resident, served alongside William H. Oswalt as a general partner

---

[1] Defendant is a retired Circuit Judge of Alabama's 24th Judicial District (Fayette, Lamar, and Pickens Counties).

until September 1, 2017 when Junkin and Oswalt withdrew and disassociated from the Partnership. (*Id*. at ¶¶ 26-27).[2]

Plaintiffs allege that in 2016, the General Partners made a claim for benefits arising from several causes of action owned by the Partnership in association with *Franconia Associates et al. v. United States*, 536 U.S. 129 (2002). (*Id*. at ¶ 30). As part of the *Franconia* settlement, the Partnership received $184,912.20. (*Id*. at ¶ 31). According to Plaintiffs, Defendant and Oswalt wrongfully diverted and misappropriated their share of the settlement funds. (*Id*. at ¶ 3). In support of this contention, Plaintiffs point to language in the Partnership Agreement, which provides that "[a]ll profits, losses and credits . . . and all Net Cash Flow available for distribution shall be distributed in accordance with the following: 30% to the General Partners, 10% to the Special Limited Partner, and 60% to the Investment Partnership." (Doc. # 1-1 at 50). Plaintiffs claim that pursuant to the terms of the Partnership, 70% of the settlement funds should have been distributed to Plaintiffs (the limited partner and special limited partner of the Partnership). (Doc. # 1 at ¶¶ 33-34). Instead, Plaintiffs contend that Defendant and Oswalt retained the entire amount—beyond the

---

[2] The court has a continuing obligation to ensure it has subject matter jurisdiction over this proceeding. The court, on its own initiative, requested the parties to submit supplemental briefing on whether the amount-in-controversy requirement is satisfied under 28 U.S.C. § 1332(a). After full briefing and review, the court finds that the amount-in-controversy requirement is satisfied. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("When the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, . . . the district court, beyond all question, has original jurisdiction over that claim."). Here, the court is satisfied that Mid-South's damages exceed the $75,000 threshold when considering both compensatory and punitive damages under Plaintiff's claim for conversion. *See Indus. Techs., Inc. v. Jacobs Bank*, 872 So. 2d 819, 826 (Ala. 2003) ("Conversion is an *intentional* tort. . . . 'The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods [of the plaintiff] which is in fact inconsistent with the plaintiff's rights.' Intentional torts ordinarily carry punitive damages, if the jury chooses to award them." (citations omitted)); *Blackwell v. Great Am. Fin. Res., Inc.*, 620 F. Supp. 2d 1289, 1290 (N.D. Ala. 2009) ("[I]n 'determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered.'" (citation omitted)); *see* ALA. CODE § 6-11-20 (1987). Indeed, Plaintiff suggests that Mid-South's damages fall close to $260,000. (Doc. #12, at 7). Because the court is satisfied that Mid-South's claims exceed the amount in controversy requirement, the court may exercise supplemental jurisdiction over AJY under 28 U.S.C. § 1367(a). *Exxon Mobil Corp.*, 545 U.S. at 1256 ("[W]e find that § 1367 clearly and unambiguously provides district courts with the authority in diversity [cases] to exercise supplemental jurisdiction over . . . claims . . . who do not meet the minimum amount in controversy as long as the district court has original jurisdiction over the claims of at least one of the [plaintiffs].").

30% designated to the General Partners--in violation of the terms of the Partnership Agreement. (*Id*. at ¶ 35). Defendant and Oswalt then withdrew and disassociated from the Partnership on September 1, 2017. (*Id*. at ¶ 36).

Plaintiffs assert that in late 2018 they discovered the existence of the settlement and the alleged misappropriation of the settlement funds and therefore promptly demanded that Defendant and Oswalt return Plaintiffs' share of the funds. (*Id*. at ¶¶ 37-38). Plaintiffs settled their dispute with Oswalt, but they maintain that Defendant continues to possess and/or control $76,938.54 of their outstanding share.³ (*Id*. at ¶¶ 6, 39). As a result, Plaintiffs initiated this action on March 27, 2019. (Doc. # 1). In their Complaint, Plaintiffs assert three claims against Defendant: breach of contract (*id*. at ¶¶ 50-57), conversion (*id*. at ¶¶ 58-63), and breach of fiduciary duty (*id*. at ¶¶ 64-67).

## II. Standard of Review

### A. The Rule 12(b)(1) Standard

Under Rule 12(b)(1), an attack on subject matter jurisdiction is either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1259; *Ex Parte Safeway Ins. Co. of Ala., Inc.*, 990 So. 2d 344, 349 (Ala. 2008) ("If a defendant mounts a 'facial' challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual

---

³ At oral argument held on September 3, 2019, the parties agreed that the relevant amount at issue is $76,938.54. Indeed, 70% of $184,912.20 is $129,438.54. However, Plaintiffs settled their dispute with Oswalt (Doc. # 1 at ¶ 39), for a sum of $52,500.00 (*i.e.*, $129,438.54 - $52,500.00 = $76,938.54).

3

allegations of the complaint in the light most favorable to the non-moving party." (citation omitted)).

Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 1529. When the challenge is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)); *Ex Parte Safeway*, 990 So. 2d at 350 ("[A] court deciding a Rule 12(b)(1) motion asserting a factual challenge 'must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" (quotation omitted)).

Here, although Defendant has not been specific, the court determines that Defendant's attack is factual because it attacks the nature of Plaintiff's lawsuit without going to the specific claims in the pleadings. Indeed, Defendant's contention is that Plaintiff's claim is derivative. If that is so, the court would not have subject-matter jurisdiction because the Partnership, which is currently an unnamed party, would have to be joined and its presence in this litigation would destroy complete diversity. (Doc. # 4 at 4). However, if Plaintiff's claim is direct, the court would not need to evaluate subject-matter jurisdiction any further because joinder of the Partnership is not required, thus leaving complete diversity intact. As discussed below, the court finds that the Plaintiff's claim, properly characterized, is a direct claim; therefore, the court has subject-matter jurisdiction because the Partnership need not be joined.

### B. The Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4

However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded

facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### C. The Rule 12(b)(7) Standard

A party may move to dismiss a complaint under Rule 12(b)(7) and Rule 19 if a required party cannot feasibly be joined in the action. Fed. R. Civ. P. 12(b)(7) & 19(b). Under Rule19(a), "[a] person . . . whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims [a substantial] interest relating to the subject of the action." *Intersport, Inc. v. T-Torn Tickets LLC*, 896 F. Supp, 2d 1106, 1115 (N.D. Ala. 2012). Rule 19 sets out a two-part test for determining whether an individual or entity is an indispensable party: (1) whether the individual or entity in question should be joined; and (2) "[i]f the person should be joined, but . . . cannot be, the court must analyze . . . Rule 19(b) to determine whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable.'" *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003) (quotations omitted); *Weeks v. Housing Auth. of City of Opp, Ala.*, 292 F.R.D. 689 (M.D. Ala. 2013). The party making the 12(b)(7) motion bears the initial burden of showing that the person who was not joined is necessary for a just adjudication. *Weeks*, 292 F.R.D. at 691-92 (citation omitted).

As the Eleventh Circuit has held, "findings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation." *In re Torcise*, 116 F.3d 860, 865 (11th Cir. 1997). Moreover, if an indispensable party cannot be joined without destroying subject matter jurisdiction, the court must use its judgment in ascertaining the standards under Rule

19(b) to determine whether the litigation should continue. *Laker Airways, Inc.*, 182 F.3d at 848. In making such determination, the court must balance (1) "how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder." *Id.*

## III. Analysis

Defendant argues that Plaintiffs' claims should be dismissed for two reasons. First, Defendant contends that Plaintiffs lack standing to bring a direct action because they have not alleged that they suffered a direct injury distinct from that of the Partnership. (Doc. # 4 at 1-3). Second, Defendant maintains that Plaintiffs cannot state a proper derivative claim because they deliberately omitted the Partnership, an indispensable party to this action, in order to preserve diversity jurisdiction. (*Id*. at 3-7). The court addresses each argument in turn and concludes that Defendant's Motion to Dismiss is due to be denied.

### A. Plaintiffs Have Standing to Bring a Direct Action

As an initial matter, "[s]tate law determines whether a cause of action is direct or derivative." *Hantz v. Belyew*, 194 F. App'x. 897, 900 (11th Cir. 2006) (considering whether shareholders' fraud action against corporation was derivative rather than direct). Pursuant to Alabama Code § 10A-9A-9.01, "a partner maintaining a direct action . . . must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." By contrast, a partner maintaining a derivative action sues on behalf of the limited partnership to enforce a right of the limited partnership. *Id*. § 10A-9A-9.02. Both parties acknowledge (and the court has confirmed through its independent research) that Alabama caselaw addressing whether a cause of action is direct or derivative does so only within

7

the context of corporations, not limited partnerships. (Docs. # 7 at 4; 8 at 5). For this reason, the parties have looked to Delaware caselaw to supplement their arguments regarding Alabama law. The court agrees that Delaware case law is helpful and instructive on the matters raised in this case that Alabama courts have yet to address. After examining the relevant caselaw, and for the reasons explained below, the court concludes that Plaintiffs' claims are direct claims.

Under Delaware law, the test for determining whether a claim is direct or derivative is set forth in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). *Tooley* instructs that "a court should look to the nature of the wrong and to whom the relief should go." *Id*. at 1039. Specifically, a court applying *Tooley* must answer two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id*. at 1033. To prove a claim is direct rather than derivative, a plaintiff must "demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id*. at 1039. Crucially, "[t]he *Tooley* direct/derivative test [for claims involving corporations] is substantially the same for claims involving limited partnerships." *Culverhouse v. Paulson & Co., Inc.*, 133 A.3d 195, 198 n.9 (Del. 2016); *see Anglo Am. Sec. Funds, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 149 (Del. Ch. 2003).

Although Defendant disagrees, *Anglo American* proves informative. The *Anglo American* decision was issued by the Delaware Chancery Court approximately eight months before *Tooley*, and both cases discussed the law of derivative suits. Obviously, *Tooley* prevails as controlling law. *Culverhouse v. Paulson & Co., Inc.*, 791 F.3d 1278, 1281 (11th Cir. 2015). But *Anglo American* is wholly consistent with *Tooley*. Indeed, as the Eleventh Circuit has noted, "the analysis in *Anglo American* appears consistent with the analytical framework set forth in *Tooley*." *Culverhouse*, 791

F.3d at 1281.

In *Anglo American*, the Delaware Court of Chancery clarified the test for distinguishing direct and derivative claims in the context of a limited partnership. 829 A.2d at 149-50. "In a derivative action, the plaintiff sues for an injury done to the partnership and any recovery of damages is paid to the partnership. Conversely, in a direct action, the plaintiff sues to redress an injury suffered by the individual plaintiff and damages recovered are paid directly to the plaintiff who was injured." *Id*. at 150. However, the court acknowledged that "the structure and function of a limited partnership" (as articulated in the limited partnership agreement) must also be taken into consideration.[4] *Id*. This is so because:

> the function and structure of the partnership itself may diverge from the corporate model so dramatically that some claims, which in a corporate context might be classified as derivative, *must* be brought as direct claims in order to enable the injured parties to recover while preventing a windfall to individuals or entities whose interests were not injured.

*Id*. at 151.

For example, the limited partners in *Anglo American* claimed (at least in part) that the general partner withdrew funds from the partnership's capital account in violation of the partnership agreement, thereby exceeding the balance in the account. *Id*. Although the court classified the limited partners' injury as a diminution in value of the partnership's assets, it found that the structure and function of the partnership warranted deviation from the general rule that "diminution of the value of a business entity is classically derivative in nature." *Id*. at 151-52. Specifically, the partnership was structured in such a way that whenever the capital assets of the

---

[4] Similarly, in *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1255 (Del. 2016), the Supreme Court of Delaware noted: "The *Tooley* direct/derivative test is substantially the same for claims involving limited partnerships. While the test may be substantially the same, cases involving limited partnerships often present unique facts relating to the provisions and structure of the limited partnership agreement and how it defines the rights and responsibilities of the limited partners." (footnotes omitted) (internal quotation marks omitted).

9

partnership were reduced, "the injury accrue[d] irrevocably and almost immediately to the current partners but [would] not harm those who later became partners." *Id.* at 152; *see Sehoy Energy LP v. Haven Real Estate Group, LLC*, 2017 WL 1380619, at *8 (Del. Ch. Apr. 17, 2017) (citing *Anglo American*, noting that "this Court in equity has recognized that direct claims exist when the entity at issue is a mere pass through entity and the benefits flow directly back to the investors"). Because that loss conferred only a "fleeting injury" to the partnership, the Delaware court found that any recovery obtained in a derivative action would not "provide a remedy to wronged former partners nor to their (non-existent) successors in interest." *Id.* In concluding that the limited partners' claims were direct, the court reasoned as follows:

> Such newly admitted limited partners would receive a windfall if the [partnership] were to recover damages for diminution of [asset] value prior to their admission as limited partners. Characterizing the plaintiffs' claims as derivative would thus have the perverse effect of denying standing (and therefore recovery) to parties who were actually injured by the challenged transactions while granting ultimate recovery (and therefore a windfall) to parties who were not.

*Id.* at 153.

Here, too, the terms of the Partnership Agreement created a situation where Defendant's alleged misappropriation of Plaintiffs' share of the settlement funds caused an immediate injury only to Plaintiffs as the limited partners of the Partnership, but not to the Partnership as a whole. According to the Partnership Agreement, the General Partners were entitled to only 30% of the settlement funds; the rest was allocated to the Investment Partnership and the Special Limited Partner. (Doc. # 1-1 at 50). Thus, Defendant's alleged misappropriation of an amount in excess of the 30% designated to the General Partners caused an immediate injury to only a particular subset of the Partnership—the limited partners. In fact, the Supreme Court of Delaware emphasized the relationship between partners bound by a partnership agreement in stating: "'*Tooley* does not apply to contract rights[,]' and . . . limited partners can sue directly to enforce contractual constraints in

10

the limited partnership agreement." *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1255 (Del. 2016) (footnote omitted); *Allen v. El Paso GP Co., L.L.C.*, 90 A.3d 1097, 1110 (Del. Ch. 2014) ("Because the limited partners suffered an injury to their contractual rights [stemming from the partnership agreement], the first prong of *Tooley* supports characterizing Counts I and III [breach of the limited partnership agreement and aiding and abetting the breach, respectively] as direct claims.").

Defendant argues that "[t]he mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct under *Tooley*." (Doc. # 17 at 2) (citing *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008)). Defendant cites to *Feldman*, arguing that although Plaintiffs contend that they suffered a specific injury, their claim should not be considered direct because it is the Partnership which suffered the alleged harm, not Plaintiffs. However, the facts of *Feldman* are too remote to apply to this case. In *Feldman*, the court analyzed how *pro rata* shares are to be distributed among *all* of a corporation's shareholders in proportion to their ownership interest. 951 A.2d at 733.

*Feldman* is also distinguishable from the instant case because the entity involved here is a partnership, not a corporation, and Plaintiffs' claims are unique. That is, they are asserted by one group of partners against another. This is not a case where all stockholders (or even all partners) were injured. Rather, the contention here is that the limited partners were the only ones injured by Defendant's alleged conduct. The distribution challenged here is not a pro rata share that allegedly was improperly paid (or not paid) to all the partnership's members. To the contrary, it is only Plaintiffs' share, as defined by the Partnership Agreement, that is at issue.

Indeed, both Defendant and the current general partner (who replaced Defendant in the Partnership) have not suffered any injury because the General Partner share was already distributed

11

when Defendant and Oswalt allegedly recovered their share (and, purportedly, more) of the settlement funds. The parties are not fighting about the procurement or receipt of the funds at issue, but rather what occurred in the "sandbox" (or how the parties operated in the sandbox). The court believes that under Alabama law, Plaintiffs have sufficiently pleaded a distinct injury sufficient to sustain a direct claim.[5] *See Green v. Bradley Constr., Inc.*, 431 So. 2d 1226, 1229 (Ala. 1983) ("[W]hen a stockholder alleges that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs do not affect other stockholders, that one can maintain a direct action in his individual name.");[6] *Gerber v. EPE Holdings, LLC*, 2013 WL 209658, at *12 (Del. Ch. Jan. 18, 2013) ("Applying derivative rules to partnership-related claims can be troubling. The source of the frustration may come from the impact that those rules have upon the enforcement of contractual rights, especially where, as a matter of contract, fiduciary duties have been eliminated. If the contractual rights of the limited partners are "*independent*" of the partnership's rights, then the claims will be considered direct." (emphasis added)).

### B. Fayette Properties, Ltd. Is Not an Indispensable Party

In determining whether a partnership is an indispensable party, a penultimate question centers on whether the action is derivative or direct. In a derivative action, the partnership must be a named party. *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla.*, 140 F.3d 898, 909 (11th Cir. 1998) ("In a partnership derivative suit, the partnership is an indispensable party."). However, in a direct action brought by a limited partner against a former general partner, the partnership is

---

[5] Under Alabama Code 10A-9A-9.01 (2016), "a partner may maintain a direct action against another partner or partners or the limited partnership . . . to enforce the partner's rights and otherwise protect the partner's interests, including rights and interests under the partnership agreement."

[6] Plaintiffs' argument that this claim is direct and not derivative is both legally and logically supported. That is, as a matter of logic, if the court accepted Defendant's position and classified Plaintiffs' claims as derivative, the new general partner would receive a windfall in the form of a distribution of a portion of the recovered funds. *Anglo American*, 829 A.2d at 153

not deemed an indispensable party because the partnership generally did not suffer any harm. *Muirfield (Delaware), LP v. Pitts, Inc.*, 17 F. Supp. 2d 600, 608 (W.D. La. 1998) ("Direct actions by limited or general partners . . . render the partnership a fully *dispensable* party." (emphasis added)). Similarly, although not controlling, the Sixth Circuit has noted that "a limited partnership entity is not an indispensable party in a dispute between its partners, based on the commonsense notion that so long as the constituent partners are before the court, the partnership is not an indispensable party." *Hooper v. Wolfe*, 396 F.3d 744, 749 (6th Cir. 2005). The court finds this observation persuasive.

Here, Plaintiffs argue that Defendant has misappropriated partnership funds that, according to the Partnership Agreement, belong to them. (Doc. # 7). Notwithstanding the fact that the Partnership Agreement provides the foundation for Plaintiff's claims, the alleged harm was inflicted on Plaintiffs, and the injury was suffered by Plaintiffs (as opposed to the Partnership as a distinct entity). To be sure, there is no evidence that the Partnership suffered any harm from Defendant's conduct; rather, only Plaintiffs (i.e., the limited partners) were harmed. It follows inexorably that, in this context, it is Plaintiffs who are entitled to recover damages—not the Partnership. And, in such an instance, the Partnership simply will not be "significantly prejudiced by a judgment rendered in its absence." *See Hooper*, 396 F.3d at 749. The Partnership is not an indispensable party.

**IV.    Conclusion**

For the reasons explained above, Defendant's Motion to Dismiss (Doc. # 4) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 10, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE